The People of the State of New York ex rel. John A. W. Mount, Respondent, v. The Chapter General of America, Knights of St. John and Malta, et al., Appellants.

Insurance (life) — distinction between casualty insurance companies on the co-operative assessment plan and fraternal and beneficiary associations — under section 235 of the Insurance Law certain fraternal beneficiary associations may make valid contract to pay specified sum at end of fixed period, although no death loss has occurred — rights of members.

There is a clear distinction made by the Insurance Law between casualty companies on the co-operative assessment plan and fraternal or beneficiary societies or associations; one may be conducted for the profit of its shareholders; the other for charity only. In the one the right to contract to make payments at a fixed period of old age exists, and in the other not.

By the provisions of section 235 of the Insurance Law (Consol. Laws, chap. 28, § 235) any association incorporated under the provisions of article VII of such law which, on the 1st day of March, 1903, had in force an agreement with its members for the payment of money upon the expiration of a fixed period of not less than five years, in case a death loss had not been incurred before the expiration of that period, is excepted from the prohibition therein contained, against making "any promise or agreement with its members for the payment of money upon the expiration of a fixed period in case a death loss has not been incurred;" hence existing contracts made by such societies have been carefully preserved by the statute, and a member who has complied with the requirements of the association, other than the payment of assessments, after refusal by the association to pay installments as they come due him under such contract, and has been suspended from membership on account of such non-payment, is entitled to be restored to membership on payment of such assessments, and when restored, he has all the rights and remedies given to other members, and he should resort to such remedies, if need be, rather than to mandamus.

People ex rel. Mount v. Knights of St. John & Malta, 132 App. Div. 410, modified.

(Argued February 7, 1910; decided February 22, 1910.)

Appeal from an order of the Appellate Division of the Supreme Court in the second judicial department, entered May 22, 1909, which affirmed an order of Special Term grant-

ing a motion for a peremptory writ of mandamus to compel the reinstatement of the relator to the rights and benefits of the endowment department of the defendant association.

The facts, so far as material, are stated in the opinion.

*Louis M. King* for appellant. The relator has mistaken his remedy, the court having no jurisdiction to grant a mandamus herein. The relator should have resorted to his legal remedy, an action at law. (*People ex rel. Harris.* v. *Comrs.*, 149 N. Y. 30; *People ex rel. Lentilhon* v. *Coler*, 61 App. Div. 223; *Freeman* v. *Society*, 42 Hun, 252; *Hankinson* v. *Page*, 12 Civ. Pro. Rep. 279; *O'Brien* v. *H. B. Society*, 4 N. Y. Supp. 275; *Peck* v. *E. A. Assn.*, 5 N. Y. Supp. 215; *People ex rel. Katz* v. *Ulaszkowcer*, 56 Misc. Rep. 304; *Hargnell* v. *L. B. Society*, 47 Mich. 648; *Bates* v. *D. M. Assn.*, 47 Mich. 646; *Burland* v. *N. M. B. Assn.*, 47 Mich. 424; *Lamphere* v. *Grand Lodge*, 47 Mich. 429.) The provision in the certificate of membership issued to the relator, calling for the payment to the insured of one full assessment collected from each member in good standing in the endowment department at the time of his death, is in direct contravention of the statute. (L. 1881, ch. 256.) The provisions of section 88 of the constitution of the defendant association, under which relator claims payment upon his having attained the age of seventy years, were invalid and unauthorized by the Insurance Law. (L. 1892, ch. 690, § 235; L. 1903, ch. 450.) The defendant had no power to contract to pay a benefit to a member himself on attaining the age of seventy years. The constitutional provision relied upon by relator would create the defendant an endowment insurance company. (Bacon on Ben. Soc. & Life Ins. 167, §§ 47, 48; Morawetz on Corp. 318, § 642; Angell & Ames on Corp. § 256; *State* v. *Orear*, 45 S. W. Rep. 1084; *D. F. Ins. Co.* v. *Comm.*, 75 Penn. St. 291; *Rockhold* v. *C. M. M. Society*, 21 N. E. Rep. 794; *Calkins* v. *Bump*, 79 N. W. Rep. 491; *Walker* v. *Giddings*, 61 N. W. Rep. 512; *P. M. M. L. Ins. Co.* v. *Giddings*, 70 N. W. Rep. 1026.)

*Leon Le Roy Mott* for respondent. Mandamus is the proper remedy. (*People ex rel. Deverell* v. *M. M. P. Union*, 118 N. Y. 101; *Matter of Wilcox*, 123 App. Div. 86; *People ex rel. Grunwald* v. *Ind. Order of Ahavas*, 13 Misc. Rep. 426; *Matter of Brown* v. *Order of Foresters*, 176 N. Y. 133; *Matter of Lurman*, 90 Hun, 303; 149 N. Y. 588; *Doyle* v. *N. Y. B. Soc.*, 3 Hun, 361; *People ex rel. Crowley* v. *C. B. Legion*, 23 Abb. [N. C.] 323; *People ex rel. Schmidtt* v. *S. F. B. Soc.*, 24 How. Pr. 216.) The contract between the relator and defendant association was authorized by law. (L. 1881, ch. 256; L. 1889, ch. 520; *Supreme Council* v. *Fairman*, 62 How. Pr. 386.) The association could not by changing its constitution and by-laws deprive relator of his rights under the contract which had become fixed, or impose obligations or restrictions upon him. (*Wright* v. *Knights of Maccabees*, 196 N. Y. 391; *Dowdall* v. *C. M. B. Assn.*, 196 N. Y. 405; *Ayres* v. *Order of United Workmen*, 188 N. Y. 280; *Beach* v. *Knights of Maccabees*, 177 N. Y. 100; *Evans* v. *M. R. Assn.*, 182 N. Y. 453; *Feldblum* v. *Congregation*, 116 N. Y. Supp. 289; *Gunlock* v. *G. M. Assn.*, 4 Hun, 339.)

Haight, J. The Chapter General of America, Knights of St. John and Malta, was incorporated under the provisions of chapter 256 of the Laws of 1881 as a charitable, benevolent and beneficiary association. In February, 1888, the relator, John A. W. Mount, was admitted to membership in its endowment department and received a certificate which provided that upon his death and proofs thereof there should be paid to his wife one full assessment collected from each member in good standing in the endowment department at the time of his death, not, however, to exceed the sum of $2,000; provided assessments thereafter levied were paid and all laws, statutes, ordinances, rules and regulations of the order were observed and complied with by the relator. The members were known as sir knights and section 88 of the constitution

**2**

and laws of the order provided that " any sir knight of good standing in the endowment department, attaining the age of seventy years, may, with the consent of the beneficiary, receive for the term of five years an annual payment equal to one-fifth of the face value of his certificate, which payment to the extent made, shall be in satisfaction of the claims against the order under his certificate, and shall be so expressed by receipt to the grand almoner, as well as by indorsement on his certificate.    In such case said companion shall not be required to pay further assessments after the first payment made as above. Should the companion die before he has received the face value of his certificate, the beneficiary will receive from the order the face value, less the amount paid to the insured by virtue of this section."

The relator appears to have complied with all of the conditions and requirements of the order and remained a member in good standing until he attained the age of seventy years, which occurred in November, 1905, and thereupon he was paid by the association the sum of $400, being one-fifth of the $2,000 provided for in the certificate, for which he gave his receipt and indorsed the amount upon his certificate ; and thereafter and in December, 1906, he was paid another installment of $400 for which he gave a like receipt and indorsement.    But at the close of the next year, he received a communication from the grand chancellor, under date of January 11, 1908, to the effect that the payments of installments made to him were unlawfully made, under the decision of the insurance department, and could no longer be continued, and that he must pay all of the assessments and dues that had been made during the time intervening since he became seventy years of age, which amounted to $120.    The relator neglected to pay the assessments of $120 and thereupon, under date of February 27, 1908, he was notified that he had been suspended, by reason of such non-payment of assessments, from all of his rights and benefits in the endowment department.    The petition of the relator is for reinstatement to all of his rights and benefits in the endowment department

as a member in good standing and for such further order or relief as the court may see fit to grant.

The Special Term held that the demand for the payment of assessments levied after he became seventy years of age, coupled with the refusal of the corporation to continue to pay the annual one-fifth installments as they became due, so far excused the relator as to relieve him from the penalty of suspension from all the rights and benefits in the endowment department, and that upon payment of such assessments he be restored to all of such rights and benefits. This has been unanimously affirmed by the Appellate Division. The Special Term, however, went further and issued its peremptory writ of mandamus requiring the corporation to make an assessment upon its members for the purpose of paying the installment falling due in January, 1908. This relief was not demanded by the relator in his petition and it is not a relief that was incident to that which he prayed for and we think should not be included under the prayer for such other relief as the court may see fit to grant.

It will be recalled that, under the provisions of section 88 of the constitution and laws of the order, upon a member in good standing becoming seventy years of age, there is the express provision, that he may receive an annual payment equal to one-fifth of the face value of his certificate. This is unqualified and is not made dependent upon an assessment made therefor. If an assessment is required for one installment it might be required for each installment falling due and, therefore, there would have to be five assessments, which apparently would be inconsistent with the other provision, that in case of death, the beneficiary shall be entitled to the proceeds of one assessment only made upon the members, but not to exceed the sum of $2,000.

For many years there had existed in this and other states fraternal orders, associations and societies, some incorporated and others not, which maintained a system of assessments of its members for the purpose of charitable relief in case of the decease, sickness or other physical disability of a member, or

those dependent upon him. It was thought wise that the superintendent of the insurance department of the state should be given some supervision over such societies and associations and, therefore, by the Laws of 1881 (chapter 256, section 1) it was provided that "all associations and societies, whether voluntary or incorporated under the laws of this state, or of any other state or territory of the United States or of the District of Columbia, doing business in this state, which heretofore have or hereafter may issue any certificate to, or have made or may make any promise or agreement with their members whereby upon the decease, or sickness or other physical disability of a member any money or other benefit, charity, relief or aid is to be paid, provided or rendered to such member, or to others dependent upon him, or beneficiary designated by him, which money, benefit, charity, relief or aid are derived from voluntary donations or from admission fees, dues and assessments collected or to be collected from the members thereof and interest and accretions thereon, and which funds and the business operations of which associations and incorporations are limited to such benevolent or charitable uses, shall be subject only to the provisions of this act as hereinafter specified." Then follow provisions for reports to be made to the superintendent of insurance, etc.

In 1883, by chapter 175, an act was passed entitled "An act to provide for the incorporation and regulation of co-operative or assessment life and casualty insurance associations and societies." Under the provisions of this act there are provisions to the effect that an association making an agreement with its members whereby, upon the sickness or physical disability of a member "not by reason of having attained a certain age" for the payment of money, or other relief, derived through assessment or dues, etc., shall "be deemed to be engaged in the business of casualty insurance upon the co-operative or assessment plan, and shall be subject only to the provisions of this act." (Section 6.) It is urged that this act, in effect, became a substitute for that of 1881, to which we have already referred, and, therefore, the Knights of St. John and

Malta became a casualty insurance company and could not, therefore, issue a certificate providing for the payment of money upon a member arriving at the age of seventy years, but this construction does not appear to be borne out by the subsequent legislation; for, by chapter 690 of the Laws of 1892 there was a general revision of the insurance laws of the state, in which casualty companies and fraternal and beneficiary societies for charitable purposes are separately treated; the former in article VI and the latter in article VII. In the former article at section 201 the clause to which we have referred in the act of 1883 is reproduced, still retaining the exception of the age limitation, and such must be deemed to be the law pertaining to casualty companies upon the co-operative or assessment plan. But in the latter article, at section 235, it is provided that " any such fraternal beneficiary society, order or association, may make such promise or agreement with its members for the payment of benefits to a member or others dependent upon him, or a beneficiary designated by him in case of sickness, disability or death, or *for the payment of money upon the expiration of a fixed period*, in case a death loss has not been incurred before the expiration of such period as may be provided for by the constitution, laws, rules and regulations of such society, order or association, subject to a compliance therewith by the member." It thus appears that a clear distinction is made between the two kinds of companies, between casualty companies on the co-operative assessment plan and those of fraternal or beneficiary societies or associations; one may be conducted for the profit of its shareholders and the other for charity only. In one the right to contract to make payments at a fixed period of old age exists, and in the other not. This same distinction is still recognized by chapter 450 of the Laws of 1903, which is an act to amend the Insurance Law in relation to fraternal beneficiary societies. Under this act section 235 was amended so as to prevent such societies from hereafter making " any promise or agreement with its members for the payment of money upon the expiration of a fixed period in case a death loss has not been incurred." But

the provision carefully excepts therefrom any society, order or association incorporated under the provisions of this article, which, on the first day of March, 1903, had in force agreements with its members for the payment of money upon the expiration of a fixed period of not less than five years in case a death loss had not been incurred before the expiration of such period, so that existing contracts made by such societies have been carefully preserved under the provisions of the statute, and such remained the law at the time the relator was suspended from the benefits of the order to which he, in these proceedings, seeks to be restored. The Special Term, as we have seen, found that, notwithstanding his arrival at the age of seventy years, he was bound to make payment of the assessments thereafter made. No appeal has been taken by the relator, and consequently that question is not brought up for review. Under the constitution and laws of the order, the relator was not called upon to pay assessments after he became seventy years of age. For two years thereafter the order performed its agreement by paying two of the installments as they matured and became due; and during that time he was not called upon to pay any assessments, but after the amendment by the order of its constitution and laws in 1907, they required assessments to be paid by members who had become upwards of seventy years of age. We think, therefore, these circumstances, taken in connection with the fact that the demand made for the payment of such assessments was coupled with the refusal of the corporation to continue the payment of the installments as .they became due, did permit the court to properly excuse him from making such payments and require it to restore him upon the condition that the payments be now made. We are further of the opinion that, upon his being restored to membership in good standing, he has all the rights and remedies that are given to other members of the association and that he should resort to such remedies, if need be, rather than that of mandamus. We are, therefore, of the opinion that the order appealed from should be modified by striking therefrom the provision requiring the

board of directors to forthwith issue a call for an assessment upon each member and the payment of the sum of $400 thereof as and for the installment due in January, 1908, and as so modified affirmed, without costs of this appeal to either party.

CULLEN, Ch. J., VANN, WERNER, WILLARD BARTLETT, HISCOCK and CHASE, JJ., concur.

Ordered accordingly.